### 30491. ALLEN v. JOHNS et al.

UNDERCOFLER, Presiding Justice.

Appellant, Lillian M. Allen, petitioned for registration of Land Lot No. 766 of the 3rd District and 3rd Section of Paulding County. Appellees, Radford Johns and Ray Singleton, filed objections alleging that they are the owners of said land by record title and adverse possession. The case was referred to an examiner.

The examiner's final report concluded that, ". . . applicant has bare paper title to the property sought to be registered from a warranty deed into John T. Whitworth recorded August 4, 1890; however, there has never been any possession of subject property by applicant or anyone in her chain of title. I further conclude that W. V. McMichen went into possession of subject property in 1941, under color of title, and remained in possession until 1954. I therefore find that said W. V. McMichen acquired fee simple title to subject property by open, adverse, notorious and hostile possession for a period of more than seven years under color of title . . . I therefore conclude as a matter of law applicant is not entitled to have subject property registered and that objectors Radford Johns and Ray Singleton are the owners in fee simple . . . and are entitled to have said land registered under the Georgia Land Registration Act . . ." Appellant filed exceptions to the examiner's findings of fact and conclusions of law, moved to recommit the final report, and demanded a jury trial on the findings of fact to which exceptions were taken. The trial court overruled the exceptions, motion, and jury demand. It entered judgment registering title to appellees. This appeal followed. *Held:*

There are two chains of title to this property, one to appellant and the other to appellees extending back prior to the year 1900. As stated in the examiner's preliminary report, "I find there are two separate and conflicting chains of title shown of record, neither of which is traceable to the original land grant. From information coming to me, it appears that the land involved, to-wit: . . . is timber land with no substantial improvements thereon." Appellant obtained title to the land in 1962 from her deceased husband's estate. Her husband and two sons had previously purchased the property in 1950. Appellees purchased the property in 1970. The deeds of appellant and their predecessors in title and of appellees' predecessors in title conveyed other and separate contiguous land which is not in dispute. There is no question concerning the possession of such adjacent property. "Since the boundaries in deeds and other writings purporting to confer title may easily overlap, it

not infrequently occurs that different persons have constructive possession of the same vacant lands. In such a case, no prescription will arise from constructive possession in favor of either party as to the land included in the interlock. If neither party has the true title, the rights of him who had the prior constructive possession are the superior." Powell on Actions for Land (1946), p. 374, § 312. See also Code § 85-404. However, the parties here each claim prescriptive title by actual adverse possession under color of title.

Essentially the issue in this case is whether the appellant is entitled to have submitted to a jury certain issues of fact found by the examiner upon which he concluded that the appellees had acquired prescriptive title and were entitled to have the land registered in their names. Appellant contends that she is entitled to a jury determination upon the following issues of fact under Code Ann. § 60-304 (Ga. L. 1943, pp. 326, 328). We agree.

1. The examiner found in division (c) of the final report that witness Griffith testified that he was familiar with said property throughout his life and that it was known as the "McMichen place." McMichen was one of the appellees' predecessors in title. The witness testified as found by the examiner, however, the record shows that he also testified that prior to the time it was known as the "McMichen property" it was known as the "Whitworth property." Whitworth was one of appellant's predecessors in title.

2. The examiner found in division (e) of his final report that witness Griffith knew that McMichen went into actual possession of a portion of said property in 1941 or 1942 and remained in possession for longer than seven years. However, the entire record of the witness' testimony as to the facts which evidenced actual possession by McMichen are equivocal and do not necessarily support his conclusion.

3. The examiner found in division (h) of the final report that witness Foster advised appellant's husband and sons at the time they purchased the property in 1950 that there was an adverse claim to Lot No. 766. However, the record shows that one of the sons testified that he was present at this time and categorically denies that he was

so advised.

4. The examiner found in division (j) of the final report that appellant knew of the title dispute in 1950 when her husband and sons purchased the property. The record shows that this was categorically denied by the appellant and her son. They affirmatively state that they did not become aware of the dispute until sometime in 1954.

5. The examiner found in divisions (k) and (l) that since the death of Whitworth in the 1930s there is no evidence of any actual or adverse possession by anyone in his chain of title including the appellant or anyone on her behalf. However, the record shows that when appellant's husband and her sons purchased the property in 1950 it was all in timber and that there was no evidence of actual possession by anyone; that they had it surveyed and put up stakes and metal pins; that the surveying took 4 1/2 continuous days; that thereafter they started fencing it with a single strand of wire using posts and trees; that the fencing continued on a part-time basis on weekends from 1950 to 1961; that about 200 to 300 feet of Lot No. 766 is fenced on the northeast corner; that it was posted with 30 to 40 signs in 1950; that the hunting rights have been leased every year since 1950; that they hunt and cut firewood on the land; and pay taxes on the land.

Appellees produced evidence that their predecessors in title cut timber on said property in 1941 and 1954; that they tore down appellant's "Posted" signs; that for twelve years prior to 1954 Lot No. 766 was fenced and cattle were pastured in the woods; and that at this time there may have been a barn on the property.

After a review of the evidence in this case we find that the above facts found by the examiner are in dispute and should be submitted to a jury. Accordingly the judgment of the trial court affirming the examiner's final report, decreeing fee simple title in appellees, and ordering it so registered is reversed.

Where a party enters upon property under a writing which upon its face appears to pass title under a chain of title which extends back 75 years, knowledge of a dispute over the title does not render such possession

fraudulent and without a claim of right. The examiner's conclusion to the contrary is erroneous. *Lee v. Ogden,* 83 Ga. 325 (10 SE 349) (1889).

*Judgment reversed. All the Justices concur, except Ingram, J., disqualified.*

SUBMITTED NOVEMBER 12, 1975 — DECIDED DECEMBER 2, 1975.

*Flournoy & Still, Charles A. Evans,* for appellant.
*Fudger & Foster, Arthur W. Fudger, Thomas C. Sanders, James M. Nichols,* for appellees.